Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ruben Castillo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 3115 | **DATE** | 12/2/2002 |
| **CASE TITLE** | American Civil Liberties Union of Illinois vs. United States General Services Administration, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. The Court hereby approves the proposed settlement. This case is dismissed with prejudice pursuant to the parties' Stipulation. This Court will retain jurisdiction over the parties and this action for three years solely for purposes of enforcing the settlement.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | Document Number |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | DEC 03 2002 | |
| | Notified counsel by telephone. | | date docketed | 67 |
| ✓ | Docketing to mail notices. | | | |
| | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | docketing deputy initials | |
| | Copy to judge/magistrate judge. | 02 DEC -2 PM 12:21 | DEC 03 2002 date mailed notice | |
| RO | courtroom deputy's initials | FILED | mailing deputy initials | |
| | | Date/time received in central Clerk's Office | | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION ) <br> OF ILLINOIS, on behalf of all persons and ) <br> organizations similarly situated, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> UNITED STATES GENERAL SERVICES ) <br> ADMINISTRATION and RALETTA INGRAM, ) <br> in her individual capacity, ) <br> ) <br> Defendants. ) | No. 01 C 3115 <br><br> Judge Ruben Castillo |

DOCKETED

## MEMORANDUM OPINION AND ORDER

DEC 0 3 2002

As this Court noted when it gave preliminary approval to this settlement, our Constitution was not among the list of endless casualties suffered by our country on September 11, 2001. This lawsuit, like many others our brother and sister colleagues have confronted since the profoundly tragic events of September 11, 2001, involves the complex tension between national security and personal freedom. This tension is not new to our court system; indeed, our courts repeatedly have been faced with attempts to curtail civil liberties in the face of perceived threats to our national well-being. *See, e.g., New York Times Co. v. United States*, 403 U.S. 713 (1971); *Korematsu v. United States*, 323 U.S. 214, 219-20 (1944); *Hague v. Comm. for Indus. Org.*, 307 U.S. 496, 515-16 (1939) (Roberts, J., concurring). It is critical that courts again heighten their overall vigilance and willingness to uphold our constitutional freedoms during this turbulent

period of our history. *See New York Times*, 403 U.S. at 718-19 (Black, J., concurring); *Korematsu*, 323 U.S. at 234-35 (Murphy, J., dissenting).[1]

This particular lawsuit involves the First Amendment and the rights of the general citizenry to petition their government by conducting public rallies at our federal plaza. The American Civil Liberties Union of Illinois ("ACLU"), on behalf of itself and a plaintiff class and sub-class, sued the United States General Services Administration ("GSA") and its Property Manager, Raletta Ingram, in her individual capacity. Plaintiff challenges aspects of the GSA's practice of issuing occasional-use permits for leafleting on the federal plaza. Presently before the Court is the parties' joint motion for final approval of the class settlement and for dismissal with prejudice. For the reasons stated herein, the motion is granted. (R. 64-1.)

## RELEVANT FACTS

Plaintiff filed its original class-action complaint on May 1, 2002, alleging that Defendants violated the First Amendment by requiring a permit and prior review of all materials to be distributed on the federal plaza and by prohibiting two groups from leafleting on the plaza at the same time. After the terrorist attacks on September 11, the GSA temporarily suspended the issuance of occasional-use permits for the federal plaza. As a result, the ACLU filed an amended complaint that modified its earlier allegations and added a count challenging the GSA's suspension of permits after the terrorist attacks. On March 12, 2002, this Court certified two plaintiff classes based on the allegations of the first amended complaint. The ACLU next moved

---

[1] Justice Murphy reiterated in the *Korematsu* dissent that "[i]ndividuals must not be left impoverished of their constitutional rights on a plea of military necessity that has neither substance nor support. Thus, like other claims conflicting with the asserted constitutional rights of the individual, the military claim must subject itself to the judicial process of having its reasonableness determined and its conflicts with other interests reconciled." *Id.* at 234.

2

for, and was granted, leave to file a second amended complaint on June 18, 2002. The second amended complaint dismissed most of the existing claims, but retained the count alleging that the GSA impermissibly treated similarly situated groups differently when deciding whether to issue an occasional-use permit for the federal plaza. The second amended complaint also alleged a claim under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971), against Raletta Ingram in her individual capacity. Finally, this complaint redefined class and sub-class membership.[2]

Thereafter the parties engaged in discovery and extensive negotiations, which ultimately resulted in the proposed settlement. The stipulated settlement, among other things, provides that the GSA may not decline to issue an occasional-use permit solely on the ground that it has already granted a permit to another group or individual to use the plaza at the same time, including cases where the second group or individual opposes the activity of the first party. (R. 64, Joint Mot. for Approval, Ex. 1, Proposed Stip. for Settlement.) The GSA may decline to issue a permit, however, or may limit a group or individual to a portion of the federal plaza if that reason is justified by applicable law or regulations, or any other legitimate federal interest.[3] (*Id.*) We now consider whether to give final approval to the proposed settlement.

---

[2] The certified class includes a class "of all groups and individuals that now seek and/or in the future will seek to engage in expressive activity on the federal plaza." (R. 16, Compl. ¶ 8.) The sub-class includes all "groups and individuals that now seek and/or in the future will seek to engage in the expressive activity of leafleting on the federal plaza." (*Id.* at ¶ 9.)

[3] The Code of Federal Regulations contains regulations governing the issuance of occasional-use permits for cultural, educational and recreational activities in public areas. The GSA may disapprove a permit for many reasons, including if the proposed use interferes with access to the public areas, disrupts official Government business, interferes with the approved uses of the property or damages the property. 41 C.F.R. § 101-20.403.

## ANALYSIS

In *Hispanics United of DuPage County v. Village of Addison, Illinois*, 988 F. Supp. 1130 (N.D. Ill. 1997), this Court considered several factors in determining whether a settlement should be given final approval. The touchstone of this inquiry is whether the settlement, taken as a whole, is "fair, reasonable and adequate." *Id.* at 1149 (citing *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996)). The relevant factors include: (1) the strength of plaintiff's case on the merits, balanced against the settlement amount; (2) the defendant's ability to pay; (3) the complexity, expense and likely duration of further litigation; (4) the amount of opposition to the settlement; (5) the presence of collusion in reaching a settlement; (6) the reaction of the members of the class to the settlement; (7) the opinion of competent counsel; (8) the stages of the proceedings and the amount of discovery completed; and (9) the public interest. *Id.* at 1150.

The parties have exhaustively addressed the relevant factors. We accept their analysis and reasoning and agree that all the relevant factors establish that the proposed settlement is reasonable, fair and adequate. We pause only to make the following additional observations. First, we commend the ACLU for its diligence in monitoring and raising important First Amendment issues before this Court. We praise both parties for their efforts in this case and, most importantly, for crafting a settlement sensitive to the delicate balance between our civil liberties and our government's interest in preserving security. As noted above, we must now, as other courts have in the past, champion the First Amendment during these uncertain times to ensure that the means chosen by the government to protect our national security do not compromise the letter and spirit of the First Amendment. *See, e.g., United States v. Robel*, 389 U.S. 258, 264, 268 n.20 (1967) ("[e]ven the war power does not remove constitutional

limitations safeguarding essential liberties.") (internal citations and quotations omitted.). One commentator aptly summarized the problem in this way: the courts' approach to the First Amendment should be designed so that "the overriding objective at all times should be to equip the first amendment to do maximum service in those historical periods when intolerance of unorthodox ideas is the most prevalent and when governments are most able and most likely to stifle dissent systematically. The first amendment, in other words, should be targeted for the worst of times." Vincent Blasi, *The Pathological Perspective and the First Amendment*, 85 Colum. L. Rev. 449, 449-50 (1985). This is one of those times; thus, although litigants and the courts must recognize the need for "heightened deference to the judgments of the political branches with respect to matters of national security" when terrorism or other special circumstances are at issue, "deference is not a basis for abdicating our responsibilities under the First Amendment." *North Jersey Media Group, Inc. v. Ashcroft*, 308 F.3d 198, 226-27 (3d Cir. 2001) (Scirica, J., dissenting) (*quoting Zadvydas v. Davis*, 533 U.S. 678, 700 (2001)); *Worrell Newspapers of Ind., Inc. v. Westhafer*, 739 F.2d 1219, 1223 (7th Cir. 1984) (noting that infringement upon First Amendment freedoms may be justified, but only in exceptional cases and "[e]ven the country's interest in national security must bend to the dictates of the First Amendment") (internal citation omitted). Only heightened diligence, like that displayed in this case, will ensure that our civil liberties are protected in times when we most feel the urge to suppress them in the name of national security. Thus, for purposes of this litigation it is critical that in this era of global conflict that a full and robust debate of these important national security issues occur in the public setting of the federal plaza.

Next, we note that at the time the parties submitted their joint motion for approval of the settlement, the fairness hearing in this case had not yet been held, and therefore, the parties did not comment on the fourth and sixth factors listed above. This Court held a fairness hearing on November 26, 2002, where Plaintiff informed the Court that it had sent notice to 100 class members and an additional 100 persons who may seek an occasional-use permit for the federal plaza in the future. The notice informed the class members and potential future users of the settlement and fairness hearing. The parties received no written objections to the proposed settlement and no class member appeared to object at the hearing. At the hearing the parties reiterated their belief that the proposed settlement was a just and fair resolution of the issues presented in the lawsuit. In light of the fact that no objectors came forward to challenge the settlement, and because we believe that the settlement is otherwise fair and reasonable, we hold that these factors present no bar to approval of the settlement.

Finally, this settlement is in the public interest. The result reached by the parties both promotes free speech and protects the government and public from undue safety threats. Specifically, the proposed settlement provides that the GSA may decline to issue an occasional-use permit, or may require a party to remain within a limited sub-section of the federal plaza, based on any of the factors set forth in applicable law or regulations. But the GSA may not decline to issue an occasional-use permit to a group or individual based solely on the ground that the GSA has already granted a permit to another group for the same time period, including cases where the second party opposes the activity of the first party. This is a fair and reasonable solution that serves the public interest. Moreover, the settlement furthers the public interest by avoiding costly, unnecessary and uncertain litigation in favor of a mutually beneficial resolution

of class-action lawsuits. *See E.E.O.C. v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 888-89 (7th Cir. 1985). For these reasons we find that the proposed settlement serves the public interest.

## CONCLUSION

For the foregoing reasons, we approve the proposed settlement. This action is dismissed with prejudice pursuant to the parties' Stipulation. This Court will retain jurisdiction over the parties and this action for three years solely for purposes of enforcing the settlement. (R. 65-1.)

ENTERED:

Judge Ruben Castillo
United States District Court

**Dated: December 2, 2002**